# RHODE ISLAND STATEWIDE

# BUILDING AND SITE CONSTRUCTION AGREEMENT

Between

RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.

LABOR RELATIONS DIVISION

And

RHODE ISLAND LABORERS' DISTRICT COUNCIL
of the
LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, AFL-CIO

Acting on Behalf of

Local Union 15, Westerly, R. I.
Local Union 271, Providence, R. I.
Local Union 673, Newport, R. I.

Effective June 1, 2001 through May 31, 2005

# TABLE OF CONTENTS


| ARTICLE | | PAGE |
|---|---|---|
| I | TERRITORIAL JURISDICTION OF LOCAL UNIONS | 2 |
| II | UNION RECOGNITION, UNION SECURITY, EMPLOYMENT OF LABORERS AND SUBCONTRACTORS | 2 |
| III | WAGES - HOURS - CLASSIFICATIONS - SHIFTS | 5 |
| IV | COVERAGE AND DESCRIPTION OF LABORERS' WORK | 7 |
| V | HEATERS | 8 |
| VI | REPORTING TIME PAY | 9 |
| VII | CONDITIONS OF AGREEMENT | 10 |
| VII A | HOLIDAYS | 12 |
| VIII | BUSINESS MANAGER - FIELD REPRESENTATIVES - STEWARDS - FOREMEN | 12 |
| IX | RHODE ISLAND LABORERS' HEALTH FUND | 13 |
| X | RHODE ISLAND LABORERS' PENSION FUND | 14 |
| XI | RHODE ISLAND LABORERS' TRAINING TRUST FUND | 15 |
| XI A | RHODE ISLAND LABORERS' APPRENTICESHIP PROGRAM | 16 |
| XI B | NEW ENGLAND LABORERS' LABOR/MANAGEMENT COOPERATION TRUST FUND | 16 |
| XI C | NEW ENGLAND LABORERS' HEALTH & SAFETY FUND | 17 |
| XI D | RHODE ISLAND LABORERS' UNIFIED TRUST FUND | 18 |
| XII | RHODE ISLAND LABORERS' LEGAL SERVICES FUND | 19 |
| XIII | RHODE ISLAND LABORERS' ANNUITY FUND | 20 |
| XIV | INDUSTRY ADVANCEMENT PROGRAM | 21 |
| XV | CHECK-OFF AND PAYROLL DEDUCTION | 22 |
| XVI | DELINQUENT PAYMENTS | 24 |
| XVII | SEVERAL LIABILITY | 24 |
| XVIII | PROCEDURE FOR ADJUSTMENT OF DISPUTES & ARBITRATION | 25 |
| XIX | TERMINATION OF AGREEMENT | 26 |
| | APPENDIX "A" | 27 |
| | MEMORANDUM OF UNDERSTANDING | 34 |

THIS AGREEMENT made and entered into this 1st day of June, 2001, by and between the RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., Labor Relations Division, a non-business corporation, organized and existing under the laws of the State of Rhode Island, referred to hereinafter as the "Association," acting for and in behalf of and under the authority of its members and any members joining said Association it is authorized and has agreed to represent during the term of this Agreement, and any other Building Contractor who executes an Acceptance of the Terms and Provisions of this Agreement, collectively referred to as the "Employer", and the RHODE ISLAND LABORERS' DISTRICT COUNCIL OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, acting on behalf of Local Union 15, Westerly, Rhode Island; Local Union 271, Providence, Rhode Island; and Local Union 673, Newport, Rhode Island, hereinafter referred to as the "Union".

## PREAMBLE

This Agreement is entered into to facilitate the adjustment of grievances and disputes between the employers and employees; to provide, insofar as possible, for the continuous employment of labor and to bring about stable conditions in the industry, and to establish necessary procedures for the amicable adjustment of all disputes which may arise between employers and employees.

## DECLARATION OF PRINCIPLES

There shall be no discrimination against any workman by reason of race, creed, color, sex, or national origin.

## ARTICLE I
## TERRITORIAL JURISDICTION OF LOCAL UNIONS

This Agreement shall apply to the cities and towns within the counties of Bristol, Kent, Newport, Providence and Washington, in the State of Rhode Island. The territorial jurisdiction of each Local Union covered by this Agreement is as follows:

Local Union 15, Westerly, Rhode Island

Westerly, Charlestown, Hopkington, and Richmond.

Local Union 271, Providence, Rhode Island

Providence, Barrington, Bristol, Burrillville, Central Falls, Coventry, Cranston, Cumberland, East Greenwich, East Providence, Exeter, Foster, Glocester, Johnston, Lincoln, Narragansett, North Kingstown, North Providence, North Smithfield, Pawtucket, Scituate, Smithfield, South Kingstown, Warren, Warwick, West Greenwich, West Warwick, and Woonsocket.

Local Union 673, Newport, Rhode Island

Newport, Little Compton, Middletown, Portsmouth, Tiverton, and the Islands of Jamestown, Prudence and Block Island.

## ARTICLE II
## UNION RECOGNITION, UNION SECURITY, EMPLOYMENT OF LABORERS AND SUBCONTRACTORS

Section 1. The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all employees in the classification of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

Section 2. All present employees who are members of the Union on the effective date of this Agreement shall remain members in good standing by the payment of the regular membership dues as a condition of continued employment. All present employees who are not members of the Union and all employees who are hired hereafter for work in the classifications specified herein shall become and remain members in good standing by the payment of the regular required initiation fee and regular membership dues on the eighth day following the execution of this Agreement or the date of employment, whichever is later, and shall thereafter maintain such good dues standing for the term of this Agreement. A list of laborer employees designated by name and current wage classification shall be maintained by the employer and made available to the union upon request.

Section 3. Upon receipt of written notice from the Union, the Employer shall discharge any employee who fails to become or is not a member of the Union on the prescribed day, provided membership was available under the same terms and conditions as generally applicable to other members. The Union agrees to indemnify, defend and hold the employer harmless from any claim arising from any such discharge.

Section 4. "Membership in good standing," as referred to herein, means solely the tender, or payment of, regular membership dues and the regular initiation fee.

Section 5. Should the present Federal Law be amended during the term of this Agreement to allow compulsory membership in the union on the date of employment. This clause is hereby automatically changed to include such amendments as of the effective date of the law.

Section 6. (a) The Employer recognizes that the Laborers' Union is the established and prime source of skilled and dependable labor, necessary and required to perform the kind of work covered within the laborers' jurisdiction, and that the Laborers' Union is ready, willing, and able to furnish workmen to perform the work covered by this Agreement.

(b) The Employer reserves and shall have the right to rehire any employee who has been an employee of the company, provided said employee has worked for the Employer during the period of six (6) months preceding the date of hiring. The Employer must furnish the Union the name and address of any employee who has been recalled.

(c) When the Employer has exhausted the rehiring of former employees as stated in Section 6(b) above, then the Employer must inform the Union office of all work opportunities and openings. The Union must have the first opportunity to refer applicants for such employment openings.

(d) The Employer reserves and shall have the right to accept or reject any applicants referred by the Union. The Employer reserves and shall have the right to transfer laborers to any site he deems necessary.

(e) The Employer, in requesting referrals, shall specify to the Union, (a) the number of employees required, (b) the location of the project; (c) the nature and type of construction involved, (d) the work to be performed and (e) such other information as is deemed essential by the Employer in order to enable the Union to make proper referral of Applicants.

(f) Selection of applicants for referral to jobs shall be on a nondiscriminatory basis and shall in no way be affected by union membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of union membership policies or requirements.

(g) In the event that the Union is unable to fill the requisition of the above Employer for employees within a twenty (20) hour period, excluding Saturdays, Sundays, and Holidays, after such requisition is made by the Employer, the Employer may employ applicants directly at the job site.

(h) When an Employer requests a certain number of laborers through the Union office and these laborers appear on the job site, at the time requested, ready for work and with a card from the Union office showing that they came to fill the request, then they must be put to work or paid not less than four (4) hours' time, unless prevented from working on account of bad weather or conditions which could not have been reasonably anticipated by the Employer.

Section 7: a) Subcontracting. The Employer agrees that the wages, including Health, Annuity, Pension, Training, LECET, Health & Safety and Legal services fund contributions, and hours provided for by this Agreement shall encompass the entire work covered by this Agreement, thereby applying equally to any subcontract let by the Employer on work covered by this Agreement at the site of any job.

b) The Employer further agrees to refrain from subletting any work covered by this Agreement to be done at the site of a construction project, except where such subcontractor subscribes and agrees to be bound by this Agreement and complies with all of the terms and conditions of this Agreement; provided that the Union may with good cause reject any such contractor.

The parties recognize the Union's right to reject a contractor who it has previously terminated or a contractor that does not employ laborers to perform work covered by this Agreement.

c) The Employer agrees that he will not contract any work covered by this Agreement, which is to be performed on the job site, except from contractors who are parties to a collective bargaining agreement with the Union. The only penalty for violation of this Section is a loss of the Unified Trust Fund set forth in Article XI D on the project at issue. The Secretary-Treasurer of the Rhode Island Laborers District Council or his designee may grant relief from this Section. The granting of such relief shall not constitute a violation of the favored nation clause of this Agreement.

This Section shall not apply to file bidders on projects that carry file subbidders and to vendors furnishing material solely, or to any person furnishing trucking or transportation.

Section 8. In no event shall the Employer be required to pay higher rates of wages, or be subject to more unfavorable working rules than those established by the Union for any other employer engaged in similar work.

Section 9. If any provision of this Agreement is in conflict with the laws or regulations of the United States or the State of Rhode Island, such provision shall be superseded by such law or regulation, but all other provisions of this Agreement shall continue in full force and effect; provided that in no case shall wage rates be paid which are lower than those set out in this Agreement.

Section 10. Pre-job-Conference. The Employer who is a general contractor on a given project in which the general contract exceeds one million dollars, and if the project is the first job to be performed by the Employer within the geographical jurisdiction of the Local Union, will notify said Local Union prior to his commencing work on said project on the following:

(a) Location of jobsites;
(b) Approximate starting date and duration;
(c) Type of job;
(d) Approximate manpower requirements.

The Union may elect to accept a telephone call as a pre-job conference or it may require a pre-job conference meeting to be held at a mutually agreeable time and place to discuss the anticipated hiring procedures, work assignments, shift work, safety, health hazards and accident prevention.

This Section 10 does not apply to firms with prior work experience in such Local Union's geographical jurisdiction or to projects within the geographical jurisdiction of the Employer's home office.

The provisions of this Section shall not apply where a governmental agency's prohibition, limitation, or restriction of the work to be performed interferes with the starting time of the regular workday, in which event the starting time shall be determined by the Employer based on said prohibition, limitation or restriction.

Section 11. This Agreement shall be binding upon the Employer named herein, and its successors and assigns, and no provisions herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer, assignment, or any combination thereof or disposition of the company.

## ARTICLE III
## WAGES - HOURS - CLASSIFICATIONS - SHIFTS

Section 1. Wages shall be paid as follows:

| | 6/04/01 to 12/02/01 | 12/03/01 to 6/02/02 | 6/03/02 to 12/01/02 | 12/02/02 to 6/01/03 |
|---|---|---|---|---|
| Laborers | $19.50 | $19.90 | $20.30 | $20.80 |
| Carpenter Tender | 19.50 | 19.90 | 20.30 | 20.80 |
| Mason Tender | 19.50 | 19.90 | 20.30 | 20.80 |
| Cement Finisher Tenders | 19.50 | 19.90 | 20.30 | 20.80 |
| Scaffold Erectors | 19.50 | 19.90 | 20.30 | 20.80 |
| Wrecking Laborers | 19.50 | 19.90 | 20.30 | 20.80 |

| | 6/02/03 to 11/30/03 | 12/1/03 to 5/30/04 | 5/31/04 to 11/28/04 | 11/29/04 to 5/31/05 |
|---|---|---|---|---|
| Laborers | $21.20 | $21.60 | $22.00 | $22.50 |
| Carpenter Tender | 21.20 | 21.60 | 22.00 | 22.50 |
| Mason Tender | 21.20 | 21.60 | 22.00 | 22.50 |
| Cement Finisher Tenders | 21.20 | 21.60 | 22.00 | 22.50 |
| Scaffold Erectors | 21.20 | 21.60 | 22.00 | 22.50 |
| Wrecking Laborers | 21.20 | 21.60 | 22.00 | 22.50 |

The Union may increase the contributions to any of the fringe benefit plans set forth herein by any amount or amounts which do not in total exceed the amount of the increase in wages and the wage to be paid shall be reduced by a like amount.

Section 2. The rate to be paid for intermediate classifications shall be as follows. The amounts indicated shall be the amounts to be paid per hour, over and above the basic wage rate referred to above:

| | |
|---|---|
| Asphalt Rakers, Adzemen, Pipe Trench Bracers, Demolition Burners, Chain Saw Operators, Fence and Guard Rail Erectors, Setters of Metal Forms for Roadways, Mortar Mixers, Pipelayers, Riprap and Dry Stonewall Builders, Highway Stone Spreaders, Pneumatic Tool Operators, Wagon Drill Operators, Tree Trimmers, Barco-type Jumping Tampers, Mechanical Grinder Operators | $ .25 |
| Air Track Operators, Hydraulic and Similar Self-Powered Drills | 1.00 |
| Block Pavers, Rammers and Curb Setters | 1.00 |
| Pre-Cast Floor and Roof Plank Erectors | .75 |
| Asbestos Removers | 2.00 |
| Powdermen and Blasters | 1.00 |
| Toxic Waste Remover | 2.00 |

Section 3. Scope and Work Jurisdiction of the Asbestos Remover: The work of the asbestos remover shall cover all work in connection with the handling, control, removal, abatement, encapsulation and disposal of asbestos and/or toxic waste.

Section 4. It is agreed that employees engaged in the business of asbestos removal will abide by the following conditions:

1.Masks and all other equipment used in the removal of asbestos must meet the regulations governing the industry.

2.Employees will be required to observe proper regulations when leaving encapsulated area for any reason.

3.Employer must provide shower facilities with hot water.

4.When necessary, lunch periods will be staggered to allow employees time for clean up.

5.Employer will furnish lockers or other means to safeguard the personal belongings of employees.

Section 5. Forty (40) hours shall constitute a week's work for all laborers; eight (8) hours shall constitute a day's work from 8:00 a.m. to 12:00 noon, and between 12:30 p.m. and 4:30 p.m. on Monday, Tuesday, Wednesday, Thursday and Friday.

All hours on any regular workday prior to and after the above mentioned hours established herein shall be paid for at the rate of time and one-half the straight time rate. Work performed in excess of eleven (11) hours Monday thru Friday shall be paid for at the double time rate. Work performed in excess of eight (8) hours on Saturday shall be paid for at the double time rate. The first eight (8) hours worked on Saturday will be paid for at time and one-half. Sundays and Holidays specified in this Agreement shall be paid at the double time rate.

Section 6. When two (2) or more shifts are used, they shall continue for at least five (5) consecutive regular workdays unless the contractor is prevented from working such days or any portion thereof because of conditions beyond his control, including weather conditions. Shift work, that is second or third shift, shall work only in multiples of five (5) working days. (For example, a second or third shift may be terminated only on the fifth, tenth, or fifteenth working day, and so on, after it is commenced.)

The first shift shall be eight (8) hours, and the second and third shifts shall be eight (8) hours each, and eight (8) hours' pay shall be received for each shift. A shift which begins at or after 12 Midnight Sunday shall be considered the third shift.

Section 7. All overtime shall be paid in accordance with the provisions of Article III, Section 5.

## ARTICLE IV
## COVERAGE AND DESCRIPTION OF LABORERS' WORK

Section 1. It is agreed that Laborers' work shall include but not be limited to: all buildings Laborers' work necessary to tend the carpenters and other building trades craftsmen, all cleanup of debris, grounds and buildings, and all General Laborers' work.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations, holes, caissons and cofferdams. (This does not restrict the laborers from performing other work.)

All Laborers' work in connection with concrete work, chipping, and grinding, mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen, vibrating equipment, guniting equipment and otherwise applying concrete, whether done by hand or any other process; and wrecking, stripping, dismantling and handling concrete forms and false work.

All Laborers' work in connection with excavation, grading, preparation, concreting, asphalt and mastic paving, paving ramming, curbing and flagging of other stone materials.

All Laborers' work in connection with the cutting of holes, digging of trenches, manholes, etc., handling and conveying of all materials for same, concreting of same, and the backfilling, grading and resurfacing of same.

All Laborers' work in connection with the construction of caissons, non-metallic drains and sewers, metallic drains and sewers, any type of conduit and cribbing, lagging, bracing, sheeting, trench jacking and handling of hand-guided lagging hammers in open trenches and ditches.

All Laborers' work in connection with the shoring, underpinning and razing of all structures.

All Laborers' work in connection with drilling and loading, placing and blasting of all powder and explosives.

All Laborers' work in connection with the slinging, handling and placing of all riprap, rock and stone, retaining walls or wherever used.

All Laborers' work on precasting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job and in wrecking yards and wrecking work on construction.

All Laborers' work in connection with the removal of asbestos as set forth in this Agreement.

All Laborers' work in connection with the handling, control, removal, abatement, encapsulation, or disposal of toxic waste. All Laborers' work in connection with the classifications of work set forth in this Agreement.

The area practice within the territorial jurisdiction of this Agreement for work performed by Laborers shall be as set forth in letters, incorporated herein by reference, from the Rhode Island Chapter, Associated General Contractors of America, Inc., Labor Relations Division, dated May 24, 1954 (steel sash); September 28, 1956 (floor hardeners); March 1, 1957 (vibrators); February 3, 1958 (generators); December 11, 1959 (3) (loading and unloading, form ties, conveyors and heaters); May 20, 1960 (cartons); July 22, 1960 (stockpiling); and December 16, 1960 (steel mesh).

The Employer agrees to assign all such work as specified above only to employees covered by this Agreement.

Section 2. The Employer further recognizes that the Union claims the work set forth in Appendix A, attached hereto and made a part hereof.

## ARTICLE V
## HEATERS

When utilizing salamanders and other heaters within the jurisdiction of the Union:

(1) Each such Employer shall assign employees covered by this Agreement to service "salamanders" in accordance with the following schedule:

**BULK SOURCE**

| | |
|---|---|
| All shifts | 0 - men regardless of the number of units in the System or the size of the System |

**INDIVIDUAL UNITS**

On second and third shifts, Holidays, Saturdays and Sundays:

| | |
|---|---|
| 0 - 5 units | - 0 men |
| 6 - 20 units | - 1 man |
| 21 - 35 units | - 2 men |
| 36 - 50 units | - 3 men |

Each additional 15 units - 1 man "Individual Units", as set forth in the above schedule, shall be defined as being fed by a tank up to one hundred (100) pounds. Service on the first shift shall be performed by laborers performing other functions on the project.

(2) The Laborer, if any, assigned to service the Bulk Source system shall be required to service and hook-up the individual units of the system at the beginning of and during its operation but shall not be assigned the work of repairing or installing the piping systems, as that work is assigned to other crafts.

(3) Laborers servicing heaters on the second and third shifts on regular workdays and servicing heaters on Holidays, Saturdays and Sundays shall receive twenty-five ($.25) cents per hour above the basic rate for all hours worked. For the purpose of this Article, second and third shifts and all shifts on Holidays, Saturdays and Sundays shall be eight (8) hours each. Laborers employed more than forty (40) hours in any work week under this Article shall be paid time and one half for hours worked over forty (40).

## ARTICLE VI
## REPORTING TIME PAY

Section 1. After a person has been hired and ordered to report to work at the regular starting time and no work is provided for him on the day that he has so reported, he shall receive pay equivalent to two (2) hours at the rate applicable for that day. This pay shall not be provided if he has previously been ordered not to report for work on that particular day. If the person has been working regularly and the Employer has failed to notify him not to report for work before leaving his residence, he shall be entitled to two (2) hours' reporting time pay at the applicable rate for that day.

Section 2. Employees shall furnish the Employer with current telephone or other contact at the start of each job, and advise the Employer of any subsequent change or changes in such contact during the course of the job.

Section 3. Any person who reports to work and is ready to commence work at his regular starting time, and for whom any work is provided, regardless of the time that he works, shall receive the equivalent of not less than four (4) hours' pay for said day.

Section 4. Any person who reports to work and is ready to commence work at his regular starting time, and who works more than four (4) hours in any one day, shall receive the equivalent of not less than eight (8) hours' pay for said day.

Section 5. It is expressly provided, however, that if the employee leaves the job site without permission of the Employer, or when a person refuses to work or continue to work or work stoppage conditions brought about by a third party or parties prevents or makes ill-advised, in the opinion of the Employer, the performance of any work or the continuance of work once started, no pay for time not actually worked shall be required under any of the above-enumerated conditions.

Section 6. Where notification to the men is required under this Agreement to the effect that work shall not be performed on a particular day, notification of such fact to the steward shall be sufficient notification to the men, provided the steward is permitted enough time during working hours to notify the men.

Section 7. When weather conditions make the commencement or continuation of work impractical, then the Employer shall decide the number of and individual employees who shall work. In no event will the employees selected displace employees normally performing that task or those tasks to be worked on the inclement weather day who had been performing the task or tasks on the previous day.

Section 8. The provisions of Sections 1, 3 and 4 of this Article shall not apply when the Employer determines that work is unavailable because of weather conditions.

## ARTICLE VII
## CONDITIONS OF AGREEMENT

Section 1. All wages due under this Agreement shall be paid on the regular pay day designated by the Employer in lawful U.S. currency, Employer's payroll check, certified check, or bank check, once each week during working hours, before 4:30 p.m. Payment shall be made showing employee's name, hours worked, amount earned, social security deduction, withholding tax. Any Employer paying wages to an employee by check shall do so during working hours, before 4:30 p.m. on Monday, Tuesday, Wednesday, or Thursday. If the regular pay day falls on a holiday that is not worked, the employee then shall be paid on the day before the holiday in question unless the Employer is unable to make payment because of conditions which could not be reasonably anticipated. The Employer shall withhold not more than three (3) days' pay in any one week. If an employee is discharged or laid off for any reason, except for just cause, prior to 12 noon on any day, he shall receive a minimum of four (4) hours' wages for that day and shall be paid prior to 11:30 a.m. for all wages, due him for that day and all days worked prior to his discharge or layoff. In the event an employee is discharged or laid off for any reason, except for just cause, after 12 noon on any day, his wages shall be paid in full before 4 p.m. If payment is not made expressly as provided herein, then the employee who has been terminated shall be paid for all waiting time until paid; waiting time to be computed at the regular straight-time rate. If an employee quits of his own accord, he shall receive wages for the time that he worked on the next regular pay day.

Section 2. Raingear and slip-over boots must be provided by the Employer when men are required to work in rain, water, mud, concrete or snow. Men cannot be discharged if they are unable to work because they are not furnished raingear and slip-over boots; provided that, notwithstanding any other provision in this Agreement, no payment shall be made for time not worked. All tools, boots, hats and raingear and other implements and equipment, other than those customarily furnished by employees, necessary to the performance of any work covered by this Agreement, shall be furnished by the Employer and shall remain the property of the Employer and shall be returned to the Employer when not in use or upon leaving its employ.

Section 3. Clothes Room. The Employer shall provide a clean, comfortable, heated shed or room, of suitable size, relative to the number of Laborers employed, for the Laborers to change their clothes and partake of their lunch.

Section 4. Drinking Water. The Employer shall provide a clean can of drinking water with paper cups, readily available to each employee on the construction site.

Section 5. Toilets. Clean, sanitary toilets shall be provided for the employees' use.

Section 6. Telephone. If a telephone is on the job site, then the employees may use it in the case of an emergency.

Section 7. Lost Time Because of Accidents.

(a) There shall be no lost time on the day of a minor injury for a laborer obliged to receive medical attention and treatment, providing he returns to work within a reasonable time on that day.

(b) Employees seriously injured on the job who have to obtain medical treatment shall not be required to return the day of injury to receive payment of wages for that day. A serious injury is defined as an injury which prevents the employee from working on the working day following the date of injury.

(c) If a laborer, while working on the job, is required to secure additional treatment during working hours for a job injury, he shall be paid two (2) hours' pay for each working day on which treatment is required, to a maximum of three (3) visits.

(d) When an employee is seriously injured on the job, the steward or the foreman shall be permitted to notify the Union of the injury.

Section 8. Quitting Time. Each employee shall be given five (5) minutes at the end of the day to put away his tools and be at the clothes room or change shack at quitting time.

Section 9. Travel and Out-of-Town Expense Allowance. It is agreed that the headquarters of Local Union 15 is the Town of Westerly, the headquarters of Local Union 271 is the City of Providence, and the headquarters of Local Union 673 is the City of Newport. When employees are working on the Island of Jamestown, they shall receive bridge tokens but no other travel expense, and, provided further, transportation, room and board shall be paid by the Employer to all employees working on Block Island.

Section 10. Health, Safety and Welfare. The Employer and the Union also agree to mutually cooperate and consult with each other with respect to all aspects of safety, accident prevention, health, medical facilities and medical treatment, to the end that the health, safety and welfare of the Laborers working on the project may be adequately and properly protected and promoted and the prosecution of the work efficiently carried on; also, the safety regulations of the State of Rhode Island must be complied with in full. It is understood and agreed that the parties to this agreement shall at all times comply with Occupational Safety and Health Act Regulations and any refusal on the part of a member to work in contravention of such regulations shall not be a breech of this agreement. Further, no employee will be discharged or disciplined because he/she fails to work under unsafe conditions or because he/she insists on safe working conditions as defined by OSHA and the Employer Safety Plan whichever is more stringent. Any refusal by an employee to abide by applicable safety regulations after being duly warned will be sufficient cause for dismissal.

Section 11. Manning requirements. The Employer agrees to employ a minimum of two Laborers when Laborer work is being performed on any of its projects. However, if the Employer has more than one project in progress at the same time, it will only be obligated to employ a total of two Laborers. The Employer's compliance with this provision shall not be the basis for requiring the Employer to employ a steward on its payroll.

## ARTICLE VII A
## HOLIDAYS

Section 1. If a holiday falls on Sunday, the day celebrated as such shall be considered a holiday. Holidays which will be observed are New Year's Day, Presidents Day, Memorial Day, Fourth of July, Labor Day, Columbus Day, Armistice Day, Thanksgiving Day, Christmas Day, and any legal holiday declared by an Act of the Rhode Island Legislature.

## ARTICLE VIII
## BUSINESS MANAGER - FIELD REPRESENTATIVES STEWARDS - FOREMEN

Section 1. The Business Manager or Field Representatives of the union shall be allowed to visit the job during working hours.

Section 2. A steward shall be appointed by the Union representative who is servicing the job. He shall be allowed to carry out the provisions of this Agreement and report any violations of same to the Union. He shall work all overtime possible, and he shall not be laid off or discharged, except for just cause, unless a prior conference be held with the Business Manager or Field Representative, except where he is the last Laborer on the job other than the foreman. In the event that a layoff is to occur, the steward shall be notified as to the layoff no later than 4:00 p.m. on the date said layoff is to occur. The Employer agrees that Stewards shall not be hindered, cohersed, restrained or interfered with in their performance of grievance investigation and employee representation.

No steward shall be denied overtime because of his/her designation as Steward.

Section 3. Foremen.

(a) The minimum rate of wages for all Laborer Foremen on the basis of all regular working hours shall be One Dollar ($1.00) per hour in excess of the basic rate provided for herein, and they shall be covered by the fringe benefits of this Agreement. A foreman shall not work overtime, including Saturdays, Sundays and Holidays, unless at least one laborer employee working under his direction works said overtime hours.

(b) A Laborer Foreman shall be appointed on all projects where more than six (6) laborers are employed.

(c) All Laborer Foremen who are employed on a project with a building cost of $1 million or more shall be guaranteed a forty (40) hour week at the regular foreman wages.

y a
ne
al of

hall
ay,

union

e
his
ll

d
le
as to

or

as

the
cess

where

th a
ek at

## ARTICLE IX
## RHODE ISLAND LABORERS' HEALTH FUND

Section 1. The contributions and payment by members of the Association shall be Four Dollars and Thirty-Five ($4.35) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund". Effective June 3, 2002, the contribution and payment by members of the Association shall be Four Dollars and Fifty -Five ($4.55) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund". Effective June 2, 2003, the contribution and payment by members of the Association shall be Four Dollars and Seventy-Five ($4.75) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund". Effective November 29, 2004, the contribution and payment by members of the Association shall be Four Dollars and Ninety-Five ($4.95) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund".

Section 2. Said sum will be paid into said Fund not later than the twentieth day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The said Fund will be administered by a Board of Trustees, one half of whose members shall be selected by the Union and the other half by the Employer. The Board of Trustees shall be selected and appointed under the provisions of a Trust Agreement executed by the Union and the Employers. Said Trust Agreement shall conform to the Labor Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The said Fund will be used to purchase accident and sickness disability insurance and hospitalization, medical and surgical benefits and/or other welfare benefits of a similar nature for the said employees as provided in said Trust Agreement.

Section 3. The Union reserves the right to remove the employees whose wages, hours and working conditions are set forth in this Agreement from any job for which the Employer has failed to remit to the aforementioned Health Fund monies due tothe Fund within the time for payment thereof, as determined by the board of Trustees acting under the authority of the Agreement and Declaration of Trust under which the Fund operates.

Section 4. The failure to contribute by the Employer to the said Health Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XV herein. The Rhode Island Laborers' Health Fund shall meet the requirements of all Federal and State Laws regarding same, including the Internal Revenue Service.

## ARTICLE X
## RHODE ISLAND LABORERS' PENSION FUND

Section 1. For the purpose of providing retirement benefits for employees covered by this Agreement, each Employer shall contribute the sum of Three Dollars Twenty ($3.20) Cents per hour for each hour employees, subject to this agreement, receives pay to the Rhode Island Laborers' Pension Fund. This shall include, but shall not be limited to periods of actual hours of overtime. Effective 6/4/01 each Employer shall contribute the sum of Three Dollars ($3.30) per hour for each hour employees, subject to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund. Effective 12/03/01 each Employer shall contribute the sum of Three Dollars Forty ($3.40) Cents per hour for each hour employees, subject, to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund. Effective 12/2/02 each Employer shall contribute the sum of Three Dollars and Sixty ($3.60) Cents per hour for each hour employees, subject, to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund. Effective 12/1/03 each Employer shall contribute the sum of Three Dollars and Eighty-Five ($3.85) Cents per hour for each hour employees, subject, to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund. Effective 5/31/04 each Employer shall contribute the sum of Four Dollars and Ten ($4.10) Cents per hour for each hour employees, subject, to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund.

Section 2. Said sums will be paid into the Fund not later than the twentieth day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under and subject to the provisions of, a Trust Agreement and plan entered into by the Union and the Employers. The plan and the trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The trust and plan at all times shall be a "qualified" trust and plan, as defined by Section 401 of the Internal Revenue Code. The plan and the trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employer to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

Section 3. There shall be a total of eight (8) Trustees to constitute the Board of Trustees to administer the Fund. The Trustees to be appointed as follows: four (4) Trustees shall be appointed by the Rhode Island Laborers' District Council; two (2) Trustees shall be appointed by the Association; and two (2) Trustees shall be appointed by Construction Industries of Rhode Island. Representatives on the Board of Trustees shall at all times be equally divided among union and management (Association and Construction Industries of Rhode Island) representatives. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 4. The failure to contribute by the Employer to the Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVI herein. The Fund shall meet the requirements of all Federal and State laws regarding the same, including the Internal Revenue Service.

## ARTICLE XI
## NEW ENGLAND LABORERS' TRAINING TRUST FUND

Section 1. Each Employer agrees to pay Twenty-five (25¢) cents per hour worked by each employee covered by the terms of this Agreement to a training fund known as "New England Laborers' Training Trust Fund". Effective 6/4/01 each Employer agrees to pay thirty (30¢) cents per hour worked by each employee covered by the terms of this Agreement to a training fund known as "New England Laborers' Training Trust Fund".

Section 2. Said Sums will be paid into said Fund not later than the twentieth day of each and every month for hours worked by said employee up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of, a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The trust and plan at all times shall be an exempt trust and plan, as defined by Section 501 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

Section 3. There shall be a total of eight (8) Trustees to constitute the Board of Trustees to administer the Fund. Said Trustees to be appointed are as follows: four (4) Trustees shall be appointed by the Rhode Island Laborers' District Council; two (2) Trustees shall be appointed by the Association, and two (2) Trustees shall be appointed by the Construction Industries of Rhode Island. Representatives on the Board of Trustees shall at all times be equally divided among union and management (Association and Construction Industries of Rhode Island) representatives. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 4. The failure to contribute by the Employer to the said training fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XV herein. The New England Laborers' Training Trust Fund shall meet the requirements of all Federal and State laws regarding the same, including the Internal Revenue Service.

## ARTICLE XI A
## RHODE ISLAND LABORERS' APPRENTICESHIP PROGRAM

The parties hereby incorporate by reference as part of this agreement the "Apprenticeship Standards for the Construction Craft Laborer" adopted by the parties and approved by the U.S. DOL Bureau of Apprenticeship and Training on May 19, 1997.

Employers employing one or more apprentices shall participate in the 4000 hour Rhode Island Laborers' District Council Apprentice Program under the above-referenced standards for construction craft laborer.

a) An employer may employ apprentices on any job-site in the ratio of one (1) apprentice for each five (5) journey workers. Apprentices shall work under the supervision of competent and qualified journey workers on the job. Instruction in safety and safe work practices will be part of the job instructions in addition to that included in related instruction and in special off job courses.

b) Apprentices shall be paid the following percentages of the Journey workers Laborers' basic hourly rate as outlined in.

Article III

| Hours | Percentage of Journeymen's rates |
|---|---|
| 1-999 | 60% |
| 1000-1999 | 70% |
| 2000-2999 | 80% |
| 3000-4000 | 90% |
| 4001 and after | 100% |

The above rates may be adjusted for individual apprentices making accelerated progress. Such adjusted provisions may only be made by Committee action.

c) Apprentices shall receive the full benefit package.

## ARTICLE XI B
## NEW ENGLAND LABORERS' LABOR-MANAGEMENT COOPERATION TRUST FUND

Section 1. Each employer agrees to pay Fifteen (15¢) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "New England Laborers' Labor-Management Cooperation/Trust Fund.

Section 2. Said Sums will be paid into said Fund not later than the twentieth day of each and every month for hours worked by said employee up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of, a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws

and regulations of the United States and the State of Rhode Island. The trust and plan at all times shall be an exempt trust and plan, as defined by Section 501 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

Section 3. There shall be a total of ten (10) Trustees to constitute the Board of Trustees to administer the Fund, one of whom shall be appointed by the Association. Representatives on the Board of Trustees shall at all times be equally divided among union and management representatives. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 4. The failure to contribute by the Employer to the said training fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVI herein. The New England Laborers' Labor-Management Cooperation Trust Fund shall meet the requirements of all Federal and State laws regarding the same, including the Internal Revenue Service.

## ARTICLE XI C
## NEW ENGLAND LABORERS' HEALTH & SAFETY FUND

Section 1. Each Employer agrees to pay Ten (10¢) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "New England Laborers' Health and Safety Fund. Effective 6/4/01 each Employer agrees to pay Fifteen (15¢) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "New England Laborers' Health and Safety Fund.

Section 2. Said Sums will be paid into said Fund not later than the twentieth day of each and every month for hours worked by said employee up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of, a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The trust and plan at all times shall be an exempt trust and plan, as defined by Section 501 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

Section 3. There shall be a total of ten (10) Trustees to constitute the Board of Trustees to administer the Fund, one of whom shall be appointed by the Association. Representatives on the Board of Trustees shall at all times be equally divided among union and management representatives. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 4. The failure to contribute by the Employer to the said training fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVI herein. The New England Health & Safety Fund shall meet the requirements of all Federal and State laws regarding the same, including the Internal Revenue Service.

## ARTICLE XI D
## RHODE ISLAND LABORERS' UNIFIED TRUST FUND

Section 1. Each Employer agrees to pay forty-five (45¢) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Rhode Island Laborers' Unified Trust". Effective 6/4/01 each Employer agrees to pay seventy-five (75¢) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Rhode Island Laborers' Unified Trust". Effective 12/3/01 each Employer agrees to pay One Dollar ($ 1.00) per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Rhode Island Laborers' Unified Trust". Effective 6/2/03 each Employer agrees to pay One Dollar and Fifty ($ 1.50) Cents per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Rhode Island Laborers' Unified Trust".

Section 2. Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a board of Trustees selected under and subject to the provisions of a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended and all other applicable laws and regulations of the United States and the State of Rhode Island, the trust and plan at all times shall be an exempt trust and plan as defined by section 401 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

Section 3. There shall be a total of four (4) Trustees to constitute the Board of Trustees to administer the Fund. Said Trustees to be appointed as follows: Two (2) Trustees shall be appointed by the Rhode Island Laborers' District Council and two (2) Trustees shall be appointed by the Association. The representatives on the Board of Trustees shall at all times be equally divided among the Union and Management. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 4. The failure to contribute by the Employer to the said Unified Trust, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVI herein. The Rhode Island Laborers' Unified Trust shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

# ARTICLE XII
## RHODE ISLAND LABORERS' LEGAL SERVICE FUND

Section 1. The parties to this Agreement have created a jointly trusteed fund entitled "Rhode Island Laborers' Legal Services Fund," pursuant to Section 302 of the National Labor Relations Act, as amended, to provide employees and their dependents with assistance in defraying the cost of legal counsel. The Fund is established to collect and disburse monies for payment of benefits to the employees covered by this Agreement.

Section 2. The Employer agrees to contribute Fifty (50¢) Cents per hour for each hour worked by each employee covered by this Agreement to the Rhode Island Laborers' Legal Services Fund. Contributions will be paid into such Fund not later than the twentieth (20th) day of each and every month for the hours worked by said employees up to the end of the last completed payroll period of the preceding calendar month. The failure to contribute to this Fund by the Employer as provided herein shall be subject to the provisions of Article XVI.

Section 3. The Legal Services Trust and Plan conform to the requirements of Section 302 of the Labor-Management Relations Act, as amended.

Section 4. There shall be a total of four (4) Trustees to constitute the Board of Trustees to administer the Fund appointed as follows: two (2) Trustees shall be appointed by the Rhode Island Laborers' District Council; one (1) Trustee shall be appointed by the Association; and one (1) Trustee shall be appointed by the Construction Industries of Rhode Island. Representatives on the Board of Trustees shall at all times be equally divided among union and management (Association and Construction Industries of Rhode Island) representatives. Each of the appointing parties shall have the power to remove, replace and appoint successors to Trustees appointed by them.

Section 5. The plan and trust shall not be used to provide benefits which defray any expense involving a dispute, grievance or legal proceeding (1) between the plan employee participant, his spouse or dependents, or (2) between the plan participant, his employer, the Union or the Association or any of its members or any other party to this collective bargaining agreement, their agents or employees, or any legal entity to which they are a party, or any insurer contracting with such entity, party or Association member, or (3) for any purpose not permitted by law.

## ARTICLE XIII
## RHODE ISLAND LABORERS' ANNUITY FUND

The Employers agree to pay the sum of One Dollar and Seventy-Five ($1.75) Cents per hour worked to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. Effective 12/3/01 the Employers agree to pay the sum of One Dollar and Eighty-Five ($1.85) Cents per hour worked per employee to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. Effective 6/03/02 the Employers agree to pay the sum of Two Dollars and Ten ($2.10) Cents per hour worked per employee to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. Effective 6/2/03 the Employers agree to pay the sum of Two Dollars and Thirty-Five ($2.35) Cents per hour worked per employee to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. Effective 12/1/03 the Employers agree to pay the sum of Two Dollars and Fifty-Five ($2.55) Cents per hour worked per employee to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. Effective 5/31/04 the Employers agree to pay the sum of Two Dollars and Seventy-Five ($2.75) Cents per hour worked per employee to the Rhode Island Laborers' Annuity Fund pursuant to a plan and trust which has been adopted by the parties. The plan and trust shall conform to the provisions of the Taft-Hartley Act of 1947, as amended, and the Employees Retirement Income Security Act of 1974, as amended, and shall be administered by a Board of Trustees, one-half of which is selected by the Employers and one-half of which is selected by the Union. Reports in the form furnished by the trustees of the Fund and payments shall be made by Employers, to the Fund not later than the twentieth day of each and every month for hours worked by laborers up to the end of the last complete payroll period of the preceding calendar month. The failure of an Employer to make the payments timely shall subject such Employer to the provisions of Article XVI.

## ARTICLE XIV
## INDUSTRY ADVANCEMENT PROGRAM

Section 1. The parties hereby agree that each Employer who has entered into the terms of this Agreement, by virtue of the execution hereof by himself or an association having his authorization therefore, shall contribute Fifteen (15¢) Cents for each hour worked by an employee under the terms of this Agreement to a fund known as "The Rhode Island Construction Industry Advancement Fund." The Fund shall be administered by a Board of Trustees, three in number, appointed by the Association. Contributions to the Fund shall be deductible by the Employers as an ordinary business expense and the contributions to the Fund and the earnings thereon shall be exempt from taxation as contributions to a tax-exempt organization under Internal Revenue Code Section 501 (c) (6).

Section 2. The Fund shall be under the exclusive management of such Trustees who shall operate the Fund under the terms of a Trust and Plan executed by the Association and the Trustees.

Section 3. The Trust Fund shall be used for the following purpose:

(a) The promotion of safety and accident prevention in the construction industry; conducting or promoting educational programs such as schools for superintendents of construction and other supervisory and management personnel; paying the cost of standardizing contracts and specifications; setting up machinery to bring about cooperation among owners, architects, engineers, contractors, subcontractors, material suppliers, surety and insure interests, public agencies, and other construction industry groups and organizations to eliminate disputes and disagreements; conducting or sponsoring research into new methods and new materials for use in the construction industry; paying the expenses involved in conducting public relations and market development programs for the benefit of contractors engaged in the construction industry in Rhode Island; paying the expenses attendant to the promotion of stability of relations between labor and management; paying the expenses incurred by management in connection with collective bargaining on an industry-wide or construction trade-wide basis for the benefit of the construction contractors engaged in construction in Rhode Island, paying the expenses required to develop and maintain facilities for arbitration of disputes and the adjustment of grievances; conducting or promoting programs to insure a sufficiency of skilled employees in all crafts for all construction contractors in Rhode Island; providing contributors with information and data relating to the construction industry in the matters mentioned herein; paying the costs of administration of the Fund; paying the expenses incurred in the collection of contributions for the Fund; and such other industry-wide or construction trade-wide endeavors of like character or kind as may be desirable from time to time as the trustees shall decide.

Section 4. The Trust Fund shall not be used by the Trustees for any of the following purposes which are expressly prohibited uses or purposes:

(a) Lobbying in support of anti-union legislation or supporting litigation before a Court or any administrative body against any union or any of its agents.

(b) Subsidizing the business operation of Employers during a period or periods of work stoppages or strikes.

Section 5. The amounts payable by an Employer under this Article shall be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month.

Section 6. The failure to contribute to this Fund, notwithstanding any other available remedy, shall be subject to the provisions of Article XVI hereof.

## ARTICLE XV
## PAYROLL DEDUCTION AUTHORIZATION

Section 1. The employer agrees to deduct the amount of Seventy (70¢) Cents per hour worked for each hour from the weekly pay of each employee who has authorized such deductions in writing as provided in Section 2 hereof. Deductions shall be made from the pay of each employee who is or who becomes a member of the Union within the scope of the bargaining unit and is covered by this Agreement, provided such employee has voluntarily authorized the Employer to do so in writing in accordance with the "Deduction Authorization" form set forth below.

Section 2. The allocation and authorization for such deduction is as follows:

(a) Sixty-five Cents ($.65) shall be used as hourly membership dues to support the Local Unions and the Rhode Island Laborers' District Council.

(b) Five Cents ($.05) of the amount provided in Section 1 shall be used as a voluntary contribution payable to the Laborers' Political League (LPL) to enable the Rhode Island Laborers' District Council and its affiliated Local Unions to participate more fully in matters effecting the welfare of its members.

## DEDUCTION AUTHORIZATIONS

To all employers by whom I am employed during the terms of the present or future collective bargaining agreements either by and between signatory contractor associations and the Rhode Island Laborers' District Council of the Laborers' International Union of North America and its affiliates, or by an Employer, not a member of said associations, which has an individual collective bargaining agreement with the Council and its affiliates.

## DUES DEDUCTION

I hereby authorize my employer to deduct from my wages each week, Sixty-Five (65¢) cents per hour for each hour worked to constitute what are known as the hourly deductions as part of my membership dues for said week owing by me to the Local Union of which I am a member.

## LABORERS' POLITICAL LEAGUE DEDUCTION

I further authorize the Employer to deduct the sum of five cents ($.05) per hour for each hour worked as a voluntary contribution to the Laborers' Political League (LPL), which I understand constitutes a separate aggregate fund used for the purposes allowed under the Federal Election Campaign Act, 2 U.S.C. S44lb.

Such deductions shall be made from my earned pay on each regularly-scheduled pay day and shall be remitted to the designated depository at the same time and along with the Health, Pension, Annuity and Training Trust Fund contributions.

This authorization shall become operative upon the active date of each collective bargaining agreement entered into between my employer and the Union or April 1, 1991, whichever is sooner and shall be irrevocable for a period of one (1) year, or until termination of the collective bargaining agreement in existence between my employer and the Union, whichever occurs sooner; and I agree and direct that this authorization shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each, or between my employer and the Union, whichever shall be shorter, unless written notice is given by me to my Employer and the Local Union not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year, or of each applicable collective bargaining agreement between my employer and the Union, whichever occurs sooner.
For the effective period of this checkoff authorization and assignment, I hereby waive any right I may have to resign my union membership. Furthermore, this checkoff authorization shall continue in accordance with the above renewal and revocation provisions irrespective of my membership in the Union. Notwithstanding the foregoing, the five (5¢) cent per hour authorization for contribution to the LPL is subject to revocation at any time.

The above revocation must be in writing, bear the date and my signature, and be delivered to the officers of the Local Union of which I am a member and to the Employer with whom I am then currently employed.

____________________ ____________________

Employee Social Security No.

________________________________________

Address City or Town State

Section 3. Any employer who fails to file his reports under the check-off system when the same is due and payable shall be considered in violation of this Agreement and subject to penalties outlined in Article XVI.

## ARTICLE XVI
## DELINQUENT PAYMENTS

It is agreed that the Union, at its discretion, may withdraw the services of any employee covered by the terms of this Agreement from any Employer who has failed to make payments of money due the Pension, Health, Training, Legal and Industry Advancement funds, or any of them, for each of two (2) consecutive months. Upon the payment of all delinquencies, the same number of employees previously withdrawn from an Employer shall be returned to work for the Employer forthwith.

There shall be no lost time in wages to employees withdrawn from an Employer who is delinquent in payments to the Funds, provided the withdrawal of Laborers is authorized by the Board of Trustees of the Funds. The Board of Trustees may determine that an Employer must, in addition to remitting to the Funds for his past delinquencies, furnish a Ten Thousand Dollar ($10,000.00) surety bond to the Trustees of each respective Fund. All attorneys' fees, sheriff's costs, accounting and court costs involved to collect delinquent payment from the delinquent Employer must be borne fully by the Employer involved.

## ARTICLE XVII
## SEVERAL LIABILITY

Section 1. The obligation of each Employer member of the Association shall be several and not joint.

Section 2. The Rhode Island Laborers' District Council, a party to this agreement, shall not be held responsible for any unauthorized act committed by an affiliated Local Union or members thereof, unless the said Rhode Island Laborers' District Council has ordered or ratified the same or condoned such act after notice thereof from the Association. The Rhode Island Laborers' District Council agrees that upon the receipt of notice from the Association of any unauthorized act of a local union party to this Agreement, it will exercise all of its authority to correct the same and furnish evidence thereof to the Association.

Section 3. The obligation of each Local Union, affiliated with the Rhode Island Laborers' District Council, shall be several and not joint.

Section 4. The Rhode Island Chapter, Associated General Contractors of America, Inc., Labor Relations Division shall not be held responsible for any unauthorized act committed by one of its members unless the Association has ordered, ratified or condoned such act after notification thereof from the Council. The Association agrees that upon the receipt of such notice from the Council of any unauthorized act of a member contractor, it will exercise all its authority to correct the same and furnish evidence thereof to the Council.

# ARTICLE XVIII
# PROCEDURE FOR ADJUSTMENT OF DISPUTES & ARBITRATION

Section 1. It is the good faith intention of the parties hereto that, by the execution of this Agreement, industrial peace shall be brought about and that the Union and the Employer shall cooperate to the end that work may be done efficiently and without interruption.

Section 2. If any difference of opinion or dispute should arise between the parties as to the interpretation or application of this Agreement, a complaint will be made by the aggrieved party immediately. In each case, the first attempt at settlement shall be made between the Business Manager of the Local Union and the Contractor-Employer or his representative.

Section 3. Disputes which cannot be adjusted between the Contractor-Employer and the Local Union within forty-eight (48) hours after they arise shall be referred to the Rhode Island Chapter, Associated General Contractors of America, Inc., Labor Relations Division and the Rhode Island Laborers' District Council of the Laborers' International Union of North America.

Section 4. If, within forty-eight (48) hours, no adjustment or settlement is resolved by the procedures of Section 3 above, either party may submit the issue to arbitration.

Section 5. Arbitration Procedure. Both parties to this Agreement agree to settle all disputes, except as otherwise provided herein, through an Arbitration Board composed of two (2) members of each side. The party submitting the issue to arbitration shall notify the other party at once in writing, and a meeting to consider and to act in the matter shall take place within three (3) days. Work is to be continued during the arbitration.If a tie vote exists, then an umpire shall be chosen by them, to whom the matter in dispute shall be referred, whose decision shall be final. If an impartial umpire cannot be agreed upon within five (5) days, the Arbitrator shall be appointed by the American Arbitration Association, and the arbitration will be conducted under the voluntary labor arbitration rules of the American Arbitration Association. The Arbitrator shall not have the power to amend, add to or alter the provisions of this Agreement, and his decision will be final and binding on both sides. The cost of the arbitration shall be borne equally by both parties.

Section 6. Nothing contained herein shall require a Local Union to process an employee grievance which, in its opinion, would be without merit, and no employee shall have the right to arbitrate his grievance should the Union deem it without merit.

Section 7. It is agreed that there shall be no lockouts by the Employer, nor any strikes or stoppage of work by the Union except for nonpayment of wages, including contributions to the Health & Safety, LECET, Health, Pension, Legal, Annuity, and Training Funds.

## ARTICLE XIX
## TERMINATION OF AGREEMENT

This Agreement will expire on May 31, 2005, but if neither party to this Agreement gives notice in writing sixty (60) days prior to the expiration date to the other party, on or before March 31, 2005, that it desires a change after May 31, 2005, and so on each year thereafter unless on or before sixty (60) days prior to May 31 of any year thereafter notice is given by either party that it desires to change, modify or terminate this Agreement.

RHODE ISLAND CHAPTER,
ASSOCIATED GENERAL CONTRACTORS
OF AMERICA, INC.
LABOR RELATIONS DIVISION

RHODE ISLAND LABORERS'
DISTRICT COUNCIL of the
Laborers' International Union of
North America, AFL-CIO, on behalf
of Local Union 15, 271 and 673

LEO V. MARSHALL
Chairman

July 5, 2001
Execution Date

RONALD M. COIA
Business Manager

Witness

**APPENDIX "A"**
**INCORPORATED BY REFERENCE**

Craft Jurisdictional claims of the Laborers' International Union of North America defines the work as set forth, and shall be assigned and performed by members of the bargaining unit:

TENDERS: Tending masons, plasterers, carpenters and other building and construction crafts.

Tending shall consist of preparation of materials and the handling and conveying of materials to be used by mechanics of other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material and other materials to such mechanic, whether by bucket, hod, wheelbarrow, buggy, or other motorized unit used for such purpose, including fork lifts when used at levels not in excess of nine feet.

Unloading, handling and distributing of all materials, fixtures, furnishings and appliances from point of delivery to stockpiles and from stockpiles to approximate point of installation.

Drying of plaster, concrete, mortar or other aggregate, when done by salamander heat or any other drying process.

Cleaning and clearing of all debris, including wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structure and cleaning of all debris in building and construction area. The general cleanup, including sweeping, cleaning, washdown and wiping of construction facility, equipment and furnishings and removal and loading or burning of all debris including crates, boxes, packaging waste material. Washing or cleaning of walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein. Cleanup, mopping, washing, waxing and polishing or dusting of all floors or areas.

The aging and curing of concrete, mortar and other materials applied to walls, floors, ceilings and foundations of buildings and structures, highways, airports, overpasses and underpasses, tunnels, bridges, approaches, viaducts, ramps or other similar surfaces by any mode or method.

SCAFFOLDS Erection, planking and removal of all scaffolds for lathers, plasterers, bricklayers, masons and other construction trades crafts. Building, planking or installation and removal of all staging, swinging and hanging scaffolds, including maintenance thereof

EXCAVATIONS AND FOUNDATIONS
SITE PREPARATION AND CLEANING
TRANSPORTATION AND TRANSMISSION LINES:

Excavation for buildings and all other construction, digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals, and all handling, filling and placing of sand bags connected therewith. All drilling, blasting and scaling on the site or along the right-of-way, as well as access roads, reservoirs, including areas adjacent or pertinent to construction site; installation of temporary lines.

Preparation and compacting of roadbeds for railroad track laying, highway construction and the preparation of trenches, footings, etc. for cross-country transmission by pipelines or electric transmission or underground lines or cables.

On-site preparation and right-of-way for clearance for construction of any structures or the installation of traffic and transportation facilities such as highways, pipelines, electrical transmission lines, dam sites and reservoir areas, access roads, etc. Clearing and slashing of brush or trees by hand or with mechanical cutting methods. Blasting for all purposes, such as stumps, rocks, general demolition. Falling, bucking, yarding, loading or burning of all trees or timber on construction areas. Choker setters, off bearers, lumber handlers and all laborers connected with on-site portable sawmill operations connected with fences. Clean-up of right-of-way, including tying on, signaling, stacking of brush, trees, or other debris, and burning where required. All soil test operations of semi and unskilled labor, such as filling of sandbags, handling of timber and loading and unloading of same.

CONCRETE, BITUMINOUS CONCRETE AND AGGREGATES:

(a) Concrete, bituminous concrete, or aggregates for walls, footings, foundations, floors or for any other construction. Mixing, handling, conveying, pouring, vibrating, gunniting and otherwise placing concrete or aggregates whether done by hand or any other process. Wrecking, stripping, dismantling and handling concrete forms and false work. Building of centers for fireproofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, Diesel or electric power. When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket. Placing of concrete or aggregates, whether poured, pumped, gunnited, or placed by any other process. The assembly, uncoupling of all connections and parts of or to equipment used in mixing or conveying concrete,
aggregates or mortar, and the cleaning of such equipment, parts and/or connections. All vibrating, grinding, spreading, flowing, puddling, leveling and a strike-off of concrete or aggregates by floating, rodding or screening, by hand or mechanical means prior to finishing. Where pre-stressed or pre-cast concrete

slabs, walls or sections are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections. All mixing, handling, conveying, placing and spreading of grout for any purpose. Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b) The filling and patching of voids, crevices, etc. to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c) The loading, unloading, carrying, distributing and handling of all rods, mesh and material for use in reinforcing concrete construction. The hoisting of rods, mesh and other materials except when a derrick or out-rigger operated by other than hand power is used.

(d) All work on interior concrete columns, foundations for engine and machinery beds.

(e) The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms on all flat arch work.

The moving, cleaning, oiling, and carrying of all forms to the next point of erection.

The snapping of wall ties and removal of tie rods. Handling, placing and operation of the nozzle, hoses and pots or hoppers on sandblasting or other abrasive cleaning. The jacking of slip forms, on all semi and unskilled work connected therewith.

STREETS, WAYS AND BRIDGES: Work in the excavation, preparation, concreting, asphalt bituminous concrete and mastic paving, paving, raming, curbing, flagging and surfacing of streets, ways, courts, underpasses, overpasses, bridges, approaches and slope walls and the grading and landscaping thereof and all other labor connected therewith. Cleaning, grading, fence or guard rail installation and/or removal for streets, highways, roadways, aprons, runways, sidewalks, parking areas, airports, approaches and other similar installations. Preparation, construction and maintenance of roadbeds and sub-grade for all paving, including excavation, dumping and spreading of sub-grade material, ramming or otherwise compacting. Setting, leveling and securing or bracing of metal or other road forms and expansion joints, including placing of reinforcing, mats or wire mesh, for the above work. Loading, unloading, placing, handling and spreading of concrete aggregate or paving material, including leveling of the surface, Strike-off of concrete, when used as paving material by hand and floating or mechanical screening for strike-off. Cutting of concrete for expansion joints and other purposes. Setting of curb forms and the mixing, pouring, cutting, flowing and strike-off of concrete used therefor. The setting, leveling and grouting of all pre-cast concrete or stone curb sections. Installation of all joints, removal of forms and cleaning, stacking, loading, oiling and handling. Grading and landscaping in connection with paving work. All work in connection with loading, unloading, handling, signaling, slinging and settings of all paving blocks, rip-rap or retaining walls such as stone, wood, metal, concrete or other material and the preparations of surfaces to receive same.

## TRENCHES, MANHOLES, HANDLING AND DISTRIBUTION OF PIPE, ETC.:

Cutting of streets and ways for laying of pipes, cables, or conduits for all purposes; digging of trenches, manholes, etc.; handling and conveying all materials; concreting, backfilling, grading, and resurfacing and all other labor connected therewith. Clearing and site preparation as described herein. Cutting or jackhammering of streets, roads, sidewalks or aprons by hand or the use of air or other tools. Digging of trenches, ditches and manholes and the leveling, grading and other preparation prior to laying pipe or conduit for any purpose. Loading, unloading, sorting, stockpiling, wrapping, coating, treating, handling and distribution of water mains, gas mains, and all pipe, including placing, setting and removal of skids. Cribbing, driving of sheet piling, lagging and shoring of all ditches, trenches and manholes. Handling, mixing or pouring of concrete and the handling and placing of other materials for saddles, beds or foundations for the protection of pipes, wires, conduits, etc. Back-filling and compacting of all ditches, resurfacing of roads, streets, etc., and/or restoration of lawns and landscaping.

## SHAFTS AND TUNNELS, SUBWAYS AND SEWERS:

Construction of sewers, shafts, tunnels, subways, caissons, cofferdams, dikes, dams, levees, aqueducts, culverts, flood control projects and airports. All underground work involved in mines, underground chambers for storage or other purposes, tunnels, or shafts for any purpose, whether in free or compressed air. Drilling and blasting, mucking and removal of material from the tunnels and shafts. The cutting, drilling and installation of material used for timbering or retimbering, lagging, bracing, propping, or shoring the tunnel or shaft. Assembly and installation of multiplate, liner plate, rings, mesh, mats, or forms for any tunnel or shaft, including the setting of rods for same. Pouring, pump-creting or gunniting of concrete in any tunnel or shaft. Operations, manual or hydraulic jacking of shields and the use of such other mechanical equipment as may be necessary. Excavation or digging and grading of footings and foundations for bridges, overpasses, underpasses, aqueducts, etc and their approaches. All concrete work as described above and in addition, the hooking on, signaling and dumping of concrete for treme work over water on caissons, pilings, abutments, etc. Excavation, grading, grade preparation and landscaping of approaches. Installation of pipe, gratings and grill work for drains or other purposes. Installation of well points or any other dewatering system.

COMPRESSED AIR: In compressed air all work underground or in compression chambers, including tending of the outer aid lock. All work in compressed air construction; including, but not limited to, groutmen, trackmen, blasters, shield drivers, miners, brakemen, miner's helpers, lock tenders, mucking machine operators, motor men, gauge tenders, rodmen, compressed air electricians, setting of liner plate and ring sets, drill runners, powdermen or blasters, air hoist operators, form men, concrete blower operators, cement (insert) operators, power knife operators, erector operators, key board operators, pebble placer operators, car pushers, grout machine operators, steel setters, cage tenders, skinners track layers, dumpmen, diamond drillers, timbermen and retimbermen, cherry pickmen, nippers, chuck-tenders and cable tenders, vibratormen, jetgunmen, gunnite nozzlemen, gunmen, reboundmen and all other work connected therewith.

SEWERS, DRAINS, CULVERTS AND MULTIPLATE: Unloading, sorting, stockpiling, wrapping, goating, treating, handling, distribution and lowering or raising of all pipe or muliplate. All digging, driving of sheet piling, lagging, bracing, shoring and cribbing; breaking of concrete backfilling, templing, resurfacing and paving of all ditches in preparation for the laying of all pipe. Pipe laying, leveling and making of the joint of any pipe used for main or side sewers and storm sewers. All of the laying of clay, terra cotta, ironstone, vitrified concrete or other pipe and the making of joints for main or side sewers and storm sewers and all pipe for drainage. Unloading, handling, distribution, assembly in place, bolting and lining up of sectional metal or other pipe, including corrugated pipe. Laying of lateral sewer pipe from main sewer or side sewer to building or structure except that employer may direct that this work be done under proper supervision. (Referee Hutcheson's decision). Laying, leveling and making of the joint of all multi-purpose pipe or multi-cell conduit. Cutting of holes in walls, footings, piers or other obstructions for the passage of pipe or conduit for any purpose and the pouring of concrete to secure said holes. Digging under streets, roadways, aprons or other paved surfaces for the passage of pipe, by hand, earth auger or any other method, and manual and hydraulic jacking of pipe under said surfaces. Installation of septic tanks, cesspools and drain fields.

UNDERPINNING, LAGGING, BRACING, PROPPING AND SHORING: Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods. All work on house moving, shoring and underpinning of structures; loading, signaling, right-of-way clearance along the route of movement. Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work. Clean-up and back-filling, landscaping old and new site.

DRILLING AND BLASTING: All work of drilling, jackhammering and blasting. Operation of all rock and concrete drills, including handling, carrying, laying out of hoses, steel handling, installation of all temporary lines and handling and laying of all blasting mats. All work in connection with blasting, handling and storage of explosives, carrying to point of blasting, loading holes, setting fuses, making primers and exploding charges. All securing of surfaces with wire mesh and any other material and setting of necessary bolts and rods to anchor same. All high scaling and other rock breaking and removal after blast. Handling and laying of nets and other safety devises and signaling, flagging, road guarding.

SIGNALMEN: Signalmen on all construction work defined herein, including traffic control signalmen at construction site.

GENERAL EXCAVATION AND GRADING: The clearing, excavating, filling, backfilling, grading and landscaping of all sites for all purposes and all labor connected therewith, including chainmen, rodmen, grade markets, etc.

FACTORIES: All work in factories, mills and industrial plants performed now or as may be required hereafter; including packers, cutters, loaders, raw materials unloaders, checkers, stuffers, production line personnel and stenciling of materials. Handling of raw pigment; vessel cleaners, and/or dryers; washing or cleaning laboratory glassware; stocking of materials in laboratories; the cleaning and/or scrubbing, washing, polishing of all floors, glasses, windows, walls, restrooms and furniture.

GENERAL: Material yards, junk yards, asphalt plants, concrete products plants, cemeteries, landscape nurseries and the cleaning or reconditioning of streets, ways, sewers, and water lines and all maintenance work and work of an unskilled and semi-skilled nature, including laborers in shipyards, tank cleaners, ship scalers, shipwright helpers, watchmen, flagmen, guards, security and safety men, toolroom men, park, sports arena and all recreational center employees, utilities employees, horticultural and agricultural workers, garbage and debris handlers and cleaners.

PITS, YARDS, QUARRIES, ETC.: All drillers, blasters and/or powdermen, nippers signalmen, laborers in quarries, crushed stone yards and gravel and sand pits and other similar plants, including temporary and portable Batching Plants.

WRECKING: The wrecking or dismantling of buildings and all structures. Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams, Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards in connection with cutting, cleaning, storing, stockpiling or handling of materials. All clean-up, removal of debris; burning, back-filling, and landscaping of the site of wrecked structure.

RAILROAD TRACK WORK: Right-of-way clearance as described above, excavation, grading, sub-grading ballasting and compacting of right-of-way. Loading, unloading, stockpiling, handling and distributions of track and ties and placing of or jacking track and ties at point of installation. All burning or otherwise cutting of track. Setting of tie plates, bolting, leveling and gauging of rails and all spiking, whether by hand or mechanical means. Placing and tamping of ballast by hand or mechanical means. Construction and/or relocation of mainlines, shoe flys, sidings, gradings, crossings, relocating of pipes and drainage and culverts connected with same and removal and replacing of all fences.

STUDIO UTILITY EMPLOYEES: All such work as herein described as may be pertinent to and part of the operation of Motion Picture and other related types of studios.

USE OF TOOLS: Operations of all hand, pneumatic, electric, motor, combustion or aid-driven tools or equipment necessary for the performance of work described herein.

MISCELLANEOUS: All such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international unions and as may be hereafter acquired; including all such work and jurisdiction as declared by actions of the Executive Council or conventions of the American Federation of Labor.

# MEMORANDUM OF UNDERSTANDING

**Between**

**ASSOCIATED GENERAL CONTRACTORS OF AMERICA,**

**LABOR RELATIONS DIVISION**

**RHODE ISLAND CHAPTER**

**And The**

**RHODE ISLAND LABORERS' DISTRICT COUNCIL**

**On Behalf Of**

**LOCAL UNIONS 15, 271 AND 673**

Entered into this 31st day of January, 2003 by and between the Associated General Contractors of America, Labor Relations Division, Rhode Island Chapter and the Rhode Island Laborers' District Council on behalf of Local Unions 15, 271, and 673, the following is understood between the parties:

That the contract language in Article XI A entitled "Rhode Island Laborers' Apprenticeship Program" is modified in its entirety in the following manner:

1. New applicants for membership who cannot provide reasonable proof of 4,000 or more hours of employment as a Construction Craft Laborer (or, alternatively, cannot demonstrate equivalent skills in a placement examination administered by the Joint Apprenticeship and Training Committee (JATC) shall, whenever possible, enter the Apprenticeship program. Any person entering but failing to maintain and complete his or her Apprenticeship shall not be employed by the Employer as a Journey Worker under this Agreement. The failure of any Apprentice to maintain his or her Apprenticeship status shall obligate the Employer to discharge such person upon notice from the Union.

2. The Apprenticeship and Training Standards approved by the U.S. Department of Labor, Bureau of Apprenticeship and Training on May 19, 1997 are hereby incorporated by reference as a part of this Agreement.

3. The Apprentice wage rates:

| Hours of Credit | Wage Rate |
|---|---|
| 0-999 | 60% of Journey Worker |
| 1,000 - 1,999 | 70% of Journey Worker |
| 2,000 - 2,999 | 80% of Journey Worker |
| 3,000 - 3,999 | 90% of Journey Worker |
| over - 4,000 | Journey Worker |

4. The Employer may pay a higher rate at its option. However, the Apprentice must meet his or her commitments to the Joint Apprenticeship Committee regardless of the level being paid.

5. The Employer shall pay an Apprentice the full fringe benefit package as described in the contract.

6. Entry into the Apprenticeship Program shall be controlled by the JATC, which shall employ appropriate testing and screening procedures. An Apprentice advances from one hours-of-credit and wage-rate category to another only upon determination of satisfactory performance by the JATC, which shall have the authority to grant accelerated credit where warranted by the performance of an individual Apprentice.

7. The Employer shall participate in the Apprenticeship Program by accepting Apprentices for employment upon referral by the Union. The Employer is not obligated to accept more than one (1) Apprentice for every five (5) Journey Workers commencing with sixth laborer employed

8. The Employer may not employ an Apprentice until at least one Journey Worker is employed and thereafter may not employ more than one (1) Apprentice for every additional three (3) Journey Workers.

9. An Apprentice should, whenever possible, be rotated by the Employer through different types of work so as to become trained in a variety of operations and work skills. Where the Employer is unable to provide an Apprentice with experience in the full range of craft skills, the JATC may request the Local Union to reassign the Apprentice to other employment in order to provide that experience. For so long as the Employer is able to provide the necessary range of employment experience, the Employer may choose to retain the apprentice from job to job but shall notify the Local Union and JATC of all reassignments.

10. An Apprentice shall not work on the jobsite unless supervised by a Journey Worker.

11. An Apprentice shall not be penalized for taking off from work to attend offsite training (though time off for training is unpaid).

FOR THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, LABOR RELATIONS DIVISION RHODE ISLAND CHAPTER

FOR THE RHODE ISLAND LABORERS' DISTRICT COUNCIL on on behalf of Local Unions 15, 271 & 673

LEO MARSHALL, Chairman

RONALD M. COIA, Business Mgr.